# Exhibit 8

1

1            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2
  Case No. 18-cv-02611-MSK-STV
3  _____

4  MATTHEW COOPER and MARY COOPER,

5       Plaintiffs,

6  vs.

7  INSTANT BRANDS, INC, et al.,

8       Defendants.
  _____
9

10         Proceedings before SCOTT T. VARHOLAK, United States

11  Magistrate Judge, United States District Court for the

12  District of Colorado, commencing at 1:34 p.m., June 27, 2019,

13  in the United States Courthouse, Denver, Colorado.

14  _____

15         WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16  ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17  _____

18                    APPEARANCES

19         GEORGE McLAUGHLIN, Attorney at Law, appearing for

20  the Plaintiff.

21         MARK DAVIS and DENNIS CALLAHAN, Attorneys at Law,

22  appearing for the Defendants.

23  _____

24                    MOTION HEARING

25

2

1                   P R O C E E D I N G S

2               (Whereupon, the within electronically recorded

3     proceedings are herein transcribed, pursuant to order of

4     counsel.)

5               THE COURT:  This is 18-cv-2611.  Can I have entries

6     of appearance, please.

7               MR. MCLAUGHLIN:  George McLaughlin on behalf of the

8     plaintiffs.

9               THE COURT:  Good morning.

10              MR. CALLAHAN:  Dennis Callahan for Instant Brands.

11              THE COURT:  Good morning.

12              MR. DAVIS:  Mark Davis, local counsel.

13              THE COURT:  Good morning.  So currently pending

14    before me are two motions.  The first -- the simplest, which

15    I'll take up first, is Number 76.  This is plaintiffs'

16    unopposed motion to extend the expert disclosure deadlines.

17    And I will grant that motion, and so that will extend the

18    claiming parties' deadline to designate experts to September

19    27, 2019.  That will extend rebuttal experts to November 12,

20    2019 and any reply experts to November 27, 2019.

21              Do the parties need, then, with that extended, the

22    discovery and dispositive motions deadline extended?  I -- I

23    know only that that puts -- I think the current discovery

24    cutoff is December 4.  So that doesn't give you a ton of time

25    to do any reply expert.

3

 1            MR. MCLAUGHLIN:  I don't want to speak for the

 2   defense, but my position would be, yes, I think we are going

 3   to need additional time for the other reasons that are now

 4   known; that there are going to be additional documents

 5   produced; that the defendant needs time to get them; that

 6   they'll be things my experts want to see.  We're probably not

 7   going to be able to do meaningful depositions without having

 8   to come back and do them a second time unless we get those

 9   documents first.

10            So the fact that we're also, as of tomorrow, will

11   have a newly joined party entering its appearance and

12   defending and they need initial disclosures, et cetera, the

13   -- probably the whole schedule needs to be reconsidered

14            THE COURT:  What are you -- if I were to look at

15   setting a discovery cutoff near the end of January, does that

16   -- do you think that gives enough time to everybody?

17            MR. CALLAHAN:  I don't see an issue with that.

18            THE COURT:  Okay.

19            MR. CALLAHAN:  I mean, there -- there is a little

20   uncertainty.  I disclosed the -- the document issue to Mr.

21   McLaughlin within a day or two of discovering it.  I -- I

22   notified him yesterday or the day before.  I forgot which.

23   It was early this week.

24            THE COURT:  Okay.

25            MR. CALLAHAN:  And there's still a little

4

1    uncertainty because I don't have all the information.  I

2    wanted to -- I wanted to let the Court know, I wanted to let

3    my opponent know as soon as, you know, what I knew.

4           Optimistically -- well, maybe not optimistic.  I

5    think realistically looking at early August to complete what

6    we need to do, and if that happens and we don't have any

7    unforeseen problems, I think extending it -- you know, as you

8    suggested --

9           THE COURT:  Okay.

10          MR. CALLAHAN:  -- would be fine.

11          THE COURT:  Okay.  And which documents are these

12   that you're --

13          MR. CALLAHAN:  It's a little unclear to me.

14          THE COURT:  Okay.

15          MR. CALLAHAN:  I was -- I was notified by my client

16   that there were some sources of documents that they hadn't

17   considered in their original search.

18          THE COURT:  Okay.

19          MR. CALLAHAN:  So it could involve multiple

20   requests.

21          THE COURT:  Okay.

22          MR. CALLAHAN:  It's not a specific set.

23          THE COURT:  Okay.  Why don't we do this, then.  Why

24   don't we extend the discovery deadline to January 31 of 2020

25   and then I'll extend dispositives to February 28 of 2020.  So

5

1    I'll give you a month after discovery..

2           Okay.  So just so the record's clear, I'm granting

3    Number 76 and extending the deadlines as we -- as I've

4    indicated.

5           That brings me then to Document Number 52, the

6    motion to compel filed by the plaintiff.  That was responded

7    to by the defendant and plaintiff filed a reply.  This is

8    obviously an extension of an earlier discovery dispute that

9    we had in which I had issued a ruling and then more

10   information was brought to my attention after the ruling and

11   I asked for further briefing on it.

12          Having reviewed the motion and the response, as

13   well as the reply, I am going to grant plaintiffs' motion to

14   compel here.

15          Here what plaintiff is seeking is essentially the

16   information going back five years for tops that are nearly

17   identical to the one that is alleged to have improperly

18   opened or opened when it should not have opened, when it was

19   still under pressure, and plaintiff is seeking other

20   incidents where the same thing happened with, again, nearly

21   identical covers.  Now, they're different brands, but they

22   are nearly identical covers.

23          The objection being made is essentially two-fold.

24   The first is an objection as to relevance, arguing that these

25   are different cookers -- well, arguing first that these are

6

1    different cookers and, as a result, because they are

2    different cookers, they -- the -- what has occurred with

3    those or whether there have been other incidents is

4    irrelevant.  And, again, I -- I don't find that argument

5    persuasive.  The locking mechanism is purported to be nearly

6    identical, and, therefore, whether or not this will

7    ultimately be admissible at trial is a question for Chief --

8    former Chief -- now just Judge Krieger, but the -- I think,

9    clearly, for discovery purposes, the fact that similar

10   products with similar locking mechanisms are alleged to have

11   malfunctioned and opened while under pressure is relevant.

12           The second argument is that -- as to relevance is

13   that the allegations in this case are that the cooker opened

14   while it was de-pressurized as opposed to under pressure, but

15   I don't think that's what the complaint is alleging.  I think

16   the complaint is clearly alleging that the product opened

17   while it was under pressure and that it was a default of the

18   locking mechanism as opposed to it being opened while not

19   under pressure, and so, as a result, I think that these

20   additional items are relevant.

21           The second argument that's being made is that the

22   -- allowing the production of this is overly burdensome

23   compared to the value of the litigation and here I disagree

24   with that.  First, I note that it is defendants' burden,

25   since it is defendant who is resisting the discovery, to

7

1    demonstrate burden and they've failed to do so here.  They

2    have not indicated how difficult it would be to find these

3    items, and indeed, my guess is it's not that difficult,

4    because it appears that Instant Pot creates a ticket for

5    every incident of lid opening and my guess is these tickets

6    are stored somewhere, my guess is, electronically and can be

7    rather easily found and turned over.

8           The second related argument is that the medical

9    bills are not incredibly high in this, and, therefore, to go

10   -- to require the production of all of this is outweighed by

11   the medical bills.  Once again, that argument fails:  One,

12   because they -- there hasn't been an explanation as to how

13   difficult it will be to obtain these; and two, this case

14   isn't just about the medical bills.  The allegation is that

15   plaintiff was severely injured and indeed faces permanent

16   disfiguration.  And so I don't know, ultimately, if this goes

17   to a jury and if a jury does decide that this is malfunction,

18   what value a jury would place on that, but I cannot conclude

19   that this case is simply the 40-some-thousand-dollar medical

20   bills.

21          And so as a result, I am going to grant the

22   plaintiffs' motion to compel with respect to the production

23   of the information that is kept with these tickets -- the

24   packets of information that are kept with these tickets for

25   each incident in which the -- the pots that have been

8

1    identified in the motion have malfunctioned -- or the lids

2    that have been identified in the motion have malfunctioned.

3          The second argument is whether or not a unredacted

4    copy should be produced that would contain the information

5    about the individuals who made these claims, the telephone

6    number or address.  And here, once again, I am going to grant

7    the motion.  I think that the information is certainly

8    relevant, as I indicated before.  I think that these

9    individuals may have discoverable information.  If they

10   learned that there was some sort of malfunction, similar to

11   the one alleged in this case, and they describe what

12   happened, that may be relevant information.  Indeed, they may

13   be witnesses ultimately who could testify at trial in this

14   case.  Now, again, that ultimately is up to Judge Krieger and

15   not myself, but they certainly are possible witnesses who

16   could testify.

17         There's two arguments that are being made.  The

18   first is the privacy information of these individuals, and

19   certainly I respect that and I will order that their names

20   and other information be produced under a protective order as

21   well as the medical records.  The medical records, indeed,

22   the parties may want to consider that being an Attorney's

23   Eyes Only production of those.

24         The fact that they may be contacted by plaintiff's

25   counsel, however, is simply part of the investigation that

9

1    goes on in any case in which an individual is a potential

2    witness with relevant information and may be contacted.

3              The second argument is that allowing this to happen

4    may lead to numerous depositions of these individuals.  And

5    here I think there are two things that protect against the

6    added expenses that may result from that.  The first is that

7    each side, in the scheduling order, is limited to a certain

8    number of depositions, and so the attorneys are going to have

9    to consider whether or not any individuals contain sufficient

10   information that would justify deposing them.

11             I'll note as an aside that I was a criminal defense

12   attorney for many years and I didn't get any depositions

13   before I went to trial, we just went to trial, and so I don't

14   think that every single one of these individuals would need

15   to be deposed.  Rather, they could simply be interviewed.

16             And relatedly is the fact that there are ways other

17   than depositions in order to find out this information.

18   Parties can contact them, find out whether they have

19   information.  Some of them may not.  Some of them may say

20   they don't know what happened or maybe their injury -- maybe

21   the alleged malfunction was different or maybe they didn't

22   suffer any injuries or maybe it was a mistake, but to the

23   extent that their -- that these individuals have relevant

24   information, I think that that should be discovered, and I

25   trust that the parties can manage their own expenses and

10

1   determine what discovery needs to be done beyond that to try

2   to avoid this case being -- rising attorney expenses

3   significantly high.

4            So that's my ruling with respect to the motion to

5   compel.  I am granting it.  Is there anything further that we

6   can do here today?

7            MR. MCLAUGHLIN:  Yes.  I would like a produce by

8   date.

9            THE COURT:  How long does the defense anticipate?

10   I mean, I'll give you sufficient time to pull this together,

11   especially since I just extended discovery.

12            MR. CALLAHAN:  I'm hesitating because I'm not in

13   communication with my client.  I'm going to suggest six

14   weeks.

15            THE COURT:  That's reasonable to me, and I'll even

16   give you to the Friday.  So I'll give you until August 9th of

17   2019 to produce the documents.  Anything further from the

18   defense?

19            MR. CALLAHAN:  Yes, Your Honor.  I -- I want to be

20   sure -- I mean, I had mentioned -- I raised this with the

21   Court last time and I want to be sure that I understand it,

22   and I want to be sure that everybody understands what I am to

23   produce or my client is to produce.  You previously limited

24   it to Health Canada reports.

25            THE COURT:  I --

11

1            MR. CALLAHAN:  And I understand that's not your

2    ruling today.

3            THE COURT:  Right.  It -- it's these -- my

4    understanding is what has been produced to date is that when

5    -- or what exists out there, and certainly somebody correct

6    me if I'm wrong, but I think I'm right from the briefing, is

7    every time there is a report to Instant Pot about a

8    malfunction with the locking mechanism of one of their pots

9    and by their pots, I'm going to expand this to the models

10   that are identified in the motion to compel.

11           MR. CALLAHAN:  I understand.

12           THE COURT:  They create a ticket.

13           MR. CALLAHAN:  Correct.

14           THE COURT:  And as part of that ticket, there's a

15   packet of information that they keep with that ticket.

16   That's going to be the Health Canada reports, it's also

17   potentially any follow-up that goes with it.

18           MR. CALLAHAN:  Well, that's -- that's the part that

19   I want to clarify.

20           THE COURT:  Okay.

21           MR. CALLAHAN:  The ticket system -- there is a

22   reporting system, there is communications that happen through

23   that ticket system.  Sometimes there are exhibits attached,

24   sometimes there are photos, but what was -- the Health Canada

25   report is not part of that.  That's a separate place they

12

```
 1   have to go search for that.  And I think the more time

 2   consuming and burdensome piece was trying to search, and this

 3   is what I -- I think we tried to do previously was search

 4   people's e-mails for the Brown claim or the Smith incident or

 5   whatever and that was burdensome and time consuming.

 6            Are you -- are you ordering me to --

 7            THE COURT:  I --

 8            MR. CALLAHAN:  -- ordering me just to produce the

 9   ticket information?

10            THE COURT:  I want the ticket information.

11            MR. CALLAHAN:  Okay.

12            THE COURT:  Let's produce that initially.  If -- if

13   there's an e-mail that's somewhere out there, I think that's

14   getting further afield as to the relevance.  What I think

15   plaintiff needs initially is the -- the information that's

16   kept with the ticket packet that contains whatever the

17   malfunction is, the individual's name with it.  Once they get

18   that information and -- and then any investigation that's

19   done and kept with that ticket.  Once they get that

20   information, then frankly they can go contact the plaintiffs

21   and find out any -- any additional information that they need

22   with it at that point.

23            MR. CALLAHAN:  Okay.

24            THE COURT:  Okay?

25            MR. CALLAHAN:  I understand, thank you.
```

13

1              THE COURT:  All right.  Thank you, everybody.

2    We'll be in recess.

3              (Whereupon, the within hearing was then in

4    conclusion at 1:49 p.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

14

```
 1                    TRANSCRIBER'S CERTIFICATION

 2   I certify that the foregoing is a correct transcript to the

 3   best of my ability to hear and understand the audio recording

 4   and based on the quality of the audio recording from the

 5   above-entitled matter.

 6

 7   /s/ Dyann Labo                       July 25, 2019

 8   Signature of Transcriber                  Date

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com