**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | |
|---|---|
| S.P.S., a minor, by and through LINDIE SNYDER, her mother, custodial parent and next friend, | |
| PLAINTIFF, | |
| v. | Civil Action No. 4:19-cv-212 |
| INSTANT BRANDS, INC., and DOUBLE INSIGHT, INC., d/b/a INSTANT POT COMPANY, | JUDGE CLAY D. LAND |
| DEFENDANTS. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
DEFENDANT'S UNVERIFIED INTERROGATORY ANSWERS,
COMPEL DISCOVERY, AND IMPOSE SANCTIONS**

Plaintiff again seeks the Court's assistance with discovery. Instant Brands has failed to verify any of its interrogatory answers; failed to provide a meaningful and complete privilege log; failed to provide meaningful and complete interrogatory answers; and failed to comply with the Court's January 28, 2021 Order. Plaintiff's counsel are again being forced to put thousands of dollars of time and effort into securing Instant Brands' basic compliance with the Federal Rules.

**FACTUAL BACKGROUND**

The Court is generally familiar with this case because of Plaintiff's prior Motion to Compel (Dkt 25, *et seq*.) and the Court's Order of January 28, 2021 (Dkt 31). This is a product liability action involving severe burns to a child, S.P.S., from the lid blowing off Plaintiff's Instant Pot pressure cooker while the unit was still pressurized. The burns

1

required skin grafts, caused permanent scars, and resulted in treatment costs of over $65,000. See, e.g., Plaintiff's Complaint, ¶ 9 (Dkt 1); Declaration of Adam J. Kress ("Kress Declaration"), ¶ 2.

Discovery has not gone well since the Court last addressed this case in its January 28, 2021 Order. The issues are summarized below.

**Unverified Interrogatory Answers:** Instant Brands' original interrogatory answers were served unverified on July 9, 2020. See Dkt 25-4 (Instant Brands' interrogatory answers). The lack of verification was noted in Plaintiff's Reply for the original motion (see Dkt 29, p. 10), but the answers were never verified. Kress Declaration, ¶ 3.

Instant Brands served Amended Interrogatory Answers on February 11, 2021. The amended answers are similar, but not identical, to the originals. The original answers have presumably been abandoned because the amended answers do not restate the original answers and then provide an "amended" response. Rather, the amended answers are an entirely new stand-alone document. These amended answers were also served unverified. See Exhibit 1 (Instant Brands' First Amended Interrogatory Answers).[1] Despite multiple requests for verification, the amended answers remain unverified. See Declaration of Kenneth W. Pearson ("Pearson Declaration"), ¶ 2; Kress Declaration, ¶ 4.

**Failure to Comply With 1/28/21 Order – OSIs:** The Court ordered Instant Brands to do several things with respect to OSIs (other similar incidents) that relate to this motion: (1) produce the OSIs for all of its pressure cooker models for the five-year period prior to Plaintiff's December 28, 2017 incident; (2) produce the product specifications helpful for

---

[1] All of the Exhibits to this Motion are attached to the Kress Declaration filed herewith.

determining substantial similarity; and (3) state why any model or incident should not be considered similar to this case. See Order, Dkt 31, p 4. Defendant failed each assignment:

(1) The OSI Production: Instant Brands produced 17 OSIs with its "First Supplemental Disclosures" and 19 OSIs with its "Second Supplemental Disclosures." See Kress Declaration, ¶ 5 - 6, Exhibit 2 (First Supplemental Disclosures) and Exhibit 3 (Second Supplemental Disclosures).

- It is undisputed that Instant Brands has **not** produced all of its OSIs. For instance, the OSIs do not include any reference to the *Cooper* case, which involved the same model at issue here, and an incident date of September 27, 2017 (several months prior to Plaintiff's incident).[2] Instant Brands' attorneys have not been able to explain the omission, and Instant Brands has not updated its list of OSIs to include *Cooper*. See Pearson Declaration, ¶ 3; Kress Declaration, ¶ 7.
- Plaintiff's counsel are also aware of more than a half-dozen other Instant Brands OSIs that fall within the 5-year period prior to Plaintiff's incident, but have not been disclosed by Defendant. Defense counsel were also told about those omissions, and again gave neither an explanation for them nor an updated OSI list that includes them. Given the number of missing OSIs and Instant Brands' inability or lack of willingness to explain why they are being withheld from discovery, Plaintiff's counsel are concerned that many more OSIs they are *not* aware of are also being withheld. See Pearson Declaration, ¶ 4; Kress Declaration, ¶ 8.

(2) The Product Specifications: Instant Brands did not provide any product specifications for any of its other models. While technically a violation of the Court's Order, this is not a big concern for Plaintiff because Instant Brands conceded the substantial similarity of all of its other models. See item (3) below, where Instant Brands failed to contest the substantial similarity of any OSI "in terms of the features relevant to this case." Order, Dkt 31, p. 4.

(3) Explanation for any OSI Claimed Not to be Similar: Instant Brands did not contest the substantial similarity of any OSI, noting only that it believes every burn incident is the fault of the user, and that it prefers to evaluate incidents individually. See Exhibit 1, pp. 19-20.

**Failure to Comply With 1/28/21 Order – Privilege Log:** Instant Brands provided

"privilege logs" in its First and Second Supplemental Disclosures, but those logs did not

---

[2] *Cooper v. Instant Brands, Inc.*, 18-cv-02611-MSR-STV (D. Colo.) is a very similar burn injury case discussed in Plaintiff's original Motion to Compel. See Dkt 25-1, pp. 4-5, 8, and 12-13.

provide the basic information (authors, recipients, etc.) needed for others to assess the claims of privilege as required by Rule 26(b)(5)(a). See Exhibit 2, p. 3 (First Supplemental Disclosures) and Exhibit 3, pp. 1-2 (Second Supplemental Disclosures). Plaintiff does not believe these logs meet the letter or spirit of the Court's Order (Dkt 31, p. 5). Also, no privilege log was provided for Instant Brands' Amended Interrogatory Answers, which contain many privilege objections. See Exhibit 1, Interrogatory Nos. 8-12 and 21-22.

**Failure to Comply With 1/28/21 Order – Discovery Promised in December**: The Court also ordered Instant Brands to produce "the discovery responses it promised Plaintiff in mid-December." Order, Dkt 31, p. 5.[3] Instant Brands again failed to comply. Defendant served unverified Amended Interrogatory Answers (Exhibit 1), but those answers are still unverified – and therefore useless to Plaintiff – despite many requests for verification.  The supplemental document request responses that were originally promised for November 25, 2020 and extended to mid-December 2020 have never been served. As explained below in the "meet and confer" section, Plaintiff understands that Instant Brands believes it will need at least another month before it can serve any meaningful supplemental document request responses. See Pearson Declaration, ¶ 5; Kress Declaration, ¶ 9.

**Meet-and-Confer Discussions in Light of the Court's Order**: Plaintiff is well aware that the Court believes these discovery issues "could have been resolved with a little more effort and a lot more good faith." Order, Dkt 31, p. 1. If Plaintiff's counsel were in the Court's shoes, they would probably see things the same way and would likely assume counsel for both parties are complete jerks. But Plaintiff's counsel are *not* in the Court's

---

[3] This issue had been raised in Plaintiff's original motion. See Dkt 25-1, p. 5.

shoes – they are on the front lines, trying to move a case forward for a client who is being badly abused in discovery – and they would like to think none of the lawyers involved here are jerks. There is a serious problem, for sure, but it is not at all clear that the cause is unreasonable counsel.

All of the parties' meet-and-confer discussions have involved Instant Brands' national counsel, Katherine Vaughn, and Plaintiff's counsel Ken Pearson. Attorney Adam Kress has also been on almost all of these calls on behalf of Plaintiff. There have been multiple meet-and-confer calls, one of which lasted two-and-a-half hours. These calls have been polite – no name-calling or insults – but not very productive. As best Plaintiff can tell, very little progress is being made because attorney Vaughn has a challenging client. Attorney Vaughn has never bad-mouthed Instant Brands, but has made it clear that she has only limited authority to resolve these discovery issues. Several examples are provided here to help the Court understand the problem:

- <u>Verifications</u>: Plaintiff's counsel have repeatedly asked for verified interrogatory answers and have asked why they never receive any from Instant Brands.[4] Attorney Vaughn has explained that she always asks Instant Brands for verified answers, but they do not provide them. Attorney Vaughn has apologized many times for the lack of verifications, and has said she is doing the best she can to get verifications, but Instant Brands will not send them. Pearson Declaration, ¶ 2; Kress Declaration, ¶ 10.
  - o Plaintiff's counsel have no reason to doubt attorney Vaughn's explanation, but that does not change the fact that these discovery violations impose substantial costs on Plaintiff. It is not a "normal" litigation practice to force your opponent to move to compel in order to get verified interrogatory answers, and it is very expensive for those who have to write the motions. The Federal Rules were set up to prevent large, well-funded corporations like Instant Brands from using abusive discovery tactics to bludgeon individual consumers in

---

[4] Plaintiff's counsel have put about 15 such cases in suit over the last two years. Despite repeated requests, they have never received verified answers in any of them. See Kress Declaration, ¶ 10.

litigation, but that is exactly what's happening here.[5]

- CPSC Communications: Instant Brands' communications with the CPSC are very important here because they should contain all of Instant Brands' OSIs (assuming Defendant has properly reported all of its OSIs to the CPSC). There has been much discussion about this because Instant Brands says in its response to Interrogatory No. 15 (see Exhibit 1, pp. 29-30) that its CPSC communications are both "publicly accessible" and "confidential and protected by applicable authority under regulatory structures." Those statements are inconsistent and unhelpful.
  - First, it would be extraordinary if the CPSC published *any* of its communications with Instant Brands on its website, because virtually all such communications are deemed confidential – OSIs, for instance.
  - Second, Plaintiff's counsel *have* looked for this information on the CPSC website and have not been able to find any of it. During a two-and-a-half-hour meet-and-confer call on February 23, 2021 attorney Pearson asked attorney Vaughn *where* counsel should be looking for the CPSC information because they weren't able to find it.
    - Attorney Vaughn replied that she didn't know. She explained that she had not looked for Instant Brands' information on the CPSC website because she is not Instant Brands' regulatory counsel. She also does not know what "applicable authority" is, or what "regulatory structures" means in this context. Also, Instant Brands has not given her permission to produce any CPSC communications even if she knew where they were. Pearson Declaration, ¶ 6-7; Kress Declaration, ¶ 11-12.
    - Again, Plaintiff's counsel do not envy attorney Vaughn's predicament and do not blame her for the limitations Instant Brands has imposed on her; they just wish she would explain those problems to the Court because they need to be resolved.
  - Third, as noted in Plaintiff's original Motion to Compel, countertop consumer pressure cookers sold by Instant Brands and others are under intense CPSC scrutiny because they are associated with many severe burn injuries, like the case at bar. See Dkt 25-1, pp. 13-14.

---

[5] To be clear, Plaintiff's counsel get along well with attorney Vaughn and do not envy the position she is in. It is always challenging to help a difficult client understand the costs they are imposing on others and the risk that their discovery abuse may ultimately prove more costly to them than the opponent they're abusing, while simultaneously trying to preserve the client relationship. Nonetheless, what has been most frustrating about this is that attorney Vaughn has not stepped up and *explained these matters to the Court*. **Plaintiff's counsel should not have to explain defense counsel's problematic client situation.** All counsel are officers of the Court and owe it a duty of candor. Plaintiff's counsel do not know how this problem can be fixed if the Court is not told about it, so they are explaining it as best they can.

While the CPSC files are always important in consumer product litigation, they are doubly so here because of the CPSC's focus on pressure cooker burn injuries.

- <u>Document Production</u>: Instant Brands, counsel are reviewing approximately 280,000 documents, with the review taking longer than expected.[6] Defense counsel have not been able to provide a date by which the review will be complete and responsive documents will be produced, but Plaintiff's understanding is that this is at least a month away, and potentially several months. Pearson Declaration, ¶ 8; Kress Declaration, ¶ 13.
  - o Plaintiff's requests for production were served on Instant Brands on June 5, 2020. Plaintiff does not know when Instant Brands' 280,000 documents were delivered to attorney Vaughn, but she has said her office did not receive Instant Brands' permission to begin reviewing them until February 1, 2021. Plaintiff's counsel also does not know why there was an eight-month delay between Instant Brands' receipt of the requests for production and starting the document review. Pearson Declaration, ¶ 9; Kress Declaration, ¶ 14.
  - o Attorney Vaughn has said no supplemental responses to Plaintiff's requests for production will be prepared until the document review is complete and the responsive documents are available. Pearson Declaration, ¶ 8; Kress Declaration, ¶ 14.
    - ▪ Plaintiff's counsel are willing to allow Instant Brands the additional time it says it needs for review, provided that is acceptable to the Court. Since Plaintiff has not received the supplemental document request responses or the responsive documents, it does not seem productive to try to move to compel on the document issues now. Accordingly, this Motion to Compel does not include the document request responses.

- <u>Confidentiality Designations</u>: Instant Brands produced various pressure cooker user manuals, product information webpages, packaging materials and a recipe booklet as part of its First Supplemental Disclosures. See Exhibit 2, Item Nos. 10-13 and 17-27. None of those materials are confidential, but they were all *marked* as confidential.
  - o Plaintiff's counsel assumed the documents had been inadvertently marked as confidential during Defendant's batch production process. Counsel wrote a meet-and-confer letter to attorneys Vaughn and Odom indicating as much on February 3, 2021. The letter asked that the confidentiality designations be removed because the documents

---

[6] Attorney Vaughn initially said there were 380,000 documents, as discussed in Plaintiff's Reply for her original Motion to Compel. See Dkt 29, pp. 8-9. This figure was later revised down to 280,000 by attorney Vaughn. Pearson Declaration, ¶ 8; Kress Declaration, ¶ 14.

did not contain confidential information and they were or had been publicly available. See Exhibit 5 (2/3/21 meet-and-confer letter).

- ▪ To make sure there was no misunderstanding, Plaintiff also formally challenged the confidentiality designations pursuant to the parties' Protective Order. See Exhibit 5 (2/3/21 meet-and-confer letter), and Protective Order (Dkt 23, ¶ 9).

o Instant Brands did not respond to Plaintiff's letter or otherwise object to removing the confidentiality designations within 10 days as required by the Protective Order (Dkt 23, ¶ 9). However, Defendant also did not remove the erroneous designations and re-serve the documents as requested by Plaintiff. Pearson Declaration, ¶¶ 10-11; Kress Declaration, ¶¶ 15-16.

- ▪ When this issue was raised with attorney Vaughn, she said she knew of no basis on which the documents could be considered confidential, and that if it were up to her, she would remove the confidentiality designations and re-serve the documents. However, she apologized and explained that Instant Brands would not give her permission to do so, meaning that if Plaintiff wanted to be able to use those documents in this litigation without always having to file them under seal, counsel would need to file a motion to compel the removal of the designations. Plaintiff's counsel noted that this was crazy, but since a motion would be required, they would file one. Pearson Declaration, ¶¶ 11-12; Kress Declaration, ¶¶ 16-17.

- ▪ Plaintiff's counsel again have no reason to disbelieve attorney Vaughn, who says she does not want to litigate this way and yet has to deal with her client. That said, this is a sickening and extraordinarily wasteful abuse of discovery.

o Plaintiff needs to be able to freely use and rely on the user manuals, webpages and other documents *Instant Brands* produced because *Instant Brands* says they are the correct documents for Plaintiff's *Instant Brands* pressure cooker. To make those documents readily available Plaintiff's counsel filed, concurrently with this motion, a Motion to Compel Removal of Confidentiality Designations and Impose Sanctions. The motion never should have been necessary.

Finally, this meet-and-confer process is more difficult than it should be because defense counsel have provided no recent meet-and-confer letters or other writings to support Instant Brands' discovery positions. Plaintiff has no verified interrogatory answers to rely on; minimal documents; and defense counsel reports having little authority to

resolve key discovery issues. That makes it hard to reach agreement on anything. Plaintiff's counsel asked attorney Vaughn for a letter explaining Instant Brands' discovery positions and she agreed to provide one. However, she made it clear that it might be a while before she could prepare the letter. Pearson Declaration, ¶ 13. Plaintiff felt it was important to start dealing with the significant problems in this case and therefore prepared this motion.[7]

## **LEGAL ARGUMENT**

Defendant's current and prior unverified interrogatory answers should be stricken, and Instant Brands should be compelled to provide both a meaningful and complete privilege log and meaningful and complete verified interrogatory answers. Sanctions are warranted for Instant Brands' discovery abuses and its violations of the Court's January 28, 2021 discovery Order. Robust sanctions can also reasonably be expected to discourage further discovery problems.

## I.    INSTANT BRANDS' UNVERIFIED INTERROGATORY ANSWERS SHOULD BE STRICKEN.

Plaintiff has never received verified interrogatory answers from Instant Brands in this case (or any of the other roughly 15 cases Plaintiff's law firm has put in suit against Instant Brands over the last two years). Kress Declaration, ¶ 3. Failing to verify is a discovery violation that requires striking the interrogatory answers:

> Other parties have no duty to act on an unsigned … response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

---

[7] While this motion was being written on Saturday, March 21, 2021, attorney Vaughn emailed attorney Pearson explaining that her letter would be further delayed because of scheduling issues. Attorney Pearson's reply confirmed this motion was being drafted. Pearson Declaration, ¶ 13.

Rule 26(g)(2). As noted above, defense attorney Vaughn has apologized many times for not being able to obtain verified answers from Instant Brands, but that is little solace to a litigant who has to waste time and effort filing a motion on the issue.

### A.     Instant Brands' First Amended Interrogatory Answers

Defendant's First Amended Interrogatory Answers were served on February 11, 2021. See Exhibit 1. Defense counsel already knew the responses were unverified, but the lack of verification was "called to the attorney's or party's attention" via email on February 18, 2021. See Exhibit 4, last bullet point (2/18/21 email from attorney Pearson to attorneys Vaughn and Odom). That was over a month ago, but the answers were not verified at all, much less "promptly" as required by Rule 26(g). A failure to verify matters, because Plaintiff prepared her original Motion to Compel based on the assumption that Instant Brands' interrogatory answers would be verified, but they never were.[8]

In addition, "Requiring a party to sign interrogatory responses under oath serves the critical purpose of ensuring that the responding party attests to the truth of the responses." *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010) (citations omitted). Here, Instant Brands has not been "attesting to the truth" of *anything*, and its claim that it has disclosed all of its OSIs is undeniably *not* truthful. While Instant Brands may be amused that it can force personal injury plaintiffs to file motions in every case just to obtain verified interrogatory answers, Plaintiff is not, and presumably the Court is not.

---

[8] To the best of counsels' recollection, these Instant Brands' cases are the first ones they have handled in which a defendant has refused to verify its interrogatory answers.

Plaintiff specifically asks that the Court *strike* the First Amended Interrogatory Answers as provided in Rule 26(g), rather than allow untimely verification. Striking the answers will make things cleaner and easier for the parties and the Court, because the existing answers would otherwise need to be heavily amended. For instance, they only address the OSIs produced in connection with Instant Brands' *First* Supplemental Disclosures, not the OSIs covered by the *Second* Supplemental Disclosures. See Kress Declaration, ¶ 4. The interrogatories will also need to be amended to deal with Instant Brands' omission of the *Cooper* OSI and the other OSIs it withheld as discussed above in the Fact section. It will be easier for all if Instant Brands starts from a clean sheet.

### B.    Instant Brands' Original Interrogatory Answers

Defendant's original interrogatory answers were served on July 9, 2020 and never verified. The lack of verification was brought to Defendant's attention at least by the time Plaintiff's Reply was filed on January 25, 2021. See Dkt 29, p. 10. For the reasons stated above with respect to the First Amended Interrogatory Answers, Plaintiff requests that the Court also strike Instant Brands' original interrogatory answers.

## II.    INSTANT BRANDS SHOULD BE COMPELLED TO PROVIDE A MEANINGFUL AND COMPLETE PRIVILEGE LOG

Instant Brands has not provided a useful privilege log despite being under Court order to do so. See Order, Dkt 31, p. 5. The "privilege logs" included in Instant Brands' First and Second Supplemental Disclosures (Exhibits 2 and 3 respectively) listed only the date of the document, the Bates number, and an unsupported claim of privilege (and in one instance, lack of relevance). See Exhibit 2, p. 3, and Exhibit 3, pp. 1-2.

Such cursory privilege logs do not comply with Rule 26(b)(5)(A)(ii) (requiring sufficient information to assess the privilege claim) or 11th Circuit case law. See, e.g., *Meade v. General Motors LLC*, 250 F.Supp.3d 1387, 1393 (N.D. Ga. 2017) (collecting cases requiring privilege logs to list, for each separate document: the type of document; the date of its creation; the authors and their capacities; the recipients, including copy recipients, and their capacities; the subject matter; and a detailed, specific explanation of why the document is claimed to be privileged) (citations omitted).

The problems with the privilege logs were explained to attorney Vaughn in a February 3, 2021 meet-and-confer letter (Exhibit 5), but no amended logs have been served. Pearson Declaration, ¶ 14; Kress Declaration 19. Plaintiff needs to know what documents are being withheld and why, and therefore asks that Instant Brands be compelled to provide an updated privilege log addressing all of its claims of privilege.

## III. INSTANT BRANDS SHOULD BE COMPELLED TO PROVIDE MEANINGFUL, COMPLETE, AND VERIFIED INTERROGATORY ANSWERS

This section is based on Instant Brands' First Amended Interrogatory Answers (Exhibit 1) and information provided by defense counsel during the meet-and-confer calls. Plaintiff has asked the Court to strike Instant Brands' interrogatory answers for lack of verification, but assumes comparable answers will be prepared and verified by Instant Brands. This section addresses Plaintiff's main concerns with the answers.[9] The discussion of specific interrogatories below is formatted to fit the Court's January 28, 2021 Order

---

[9] The interrogatories are more streamlined now because of Instant Brands' agreement that its other pressure cookers are substantially similar to Plaintiff's unit (see Fact section at p. 4). This removes a number of them from contention.

requiring a description of the evidence sought; Defendant's reasons for not producing it; and Plaintiff's arguments and authority. See Dkt 31, p. 5.

     **A.    Interrogatory No. 5:** This question asks for information about the overall design, testing and certifications for the subject model.[10] See Exhibit 1, pp. 6-8.

- Evidence sought: Identity of Instant Brands product designer (subpart a); changes to design for lid safety and warnings (subpart b); identity of Instant Brands designer of testing protocols and documents (subpart c).

- Defendant's opposition: Plaintiff understands that Instant Brands has agreed to try to obtain and produce this information. This question is included here because the information has yet to be provided.

- Plaintiff's argument: Plaintiff simply needs to know the key people and documents so depositions can be taken effectively and efficiently.[11]

     **B.    Interrogatory Nos. 8 and 9:** These questions ask for a description of all tests and evaluations done *before* (#8) and *after* (#9) Instant Brands' first report of burn injuries to make sure its pressure cookers did not pose the lid removal burn hazard,[12] and for the identification of related documents. See Exhibit 1, pp. 15-16.

---

[10] The question also sought information for other models, but only if Instant Brands was contesting substantial similarity. Since that is no longer an issue, most of the interrogatories that refer to other models "identified in your answer to Interrogatory No. 2" now apply only to the subject model.

[11] Plaintiff also asks that the Court overrule the many unsubstantiated boilerplate objections found in all of the interrogatory answers at issue here. The objections are clearly improper. See, e.g., *Steed v. EverHome Mortg. Co.*, 308 F. App'x 364, 371 (11th Cir. 2009) ("We have noted that boilerplate objections may border on a frivolous response to discovery requests") (citations omitted); *Liguria Foods, Inc. v. Griffith Laboratories, Inc.*, 320 F.R.D. 168, 185 (N.D. Iowa 2017) ("In other words, 'merely assert[ing] boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc.... without specifying how each [interrogatory or] request for production is deficient and without articulating the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests' simply is not enough.")(citations omitted).

[12] The "lid removal burn hazard" is defined in all of Plaintiff's written discovery requests as "the risk of a person being burned by the steam and/or hot contents of an Instant Brands pressure cooker when the person operating the cooker does not realize the unit is still pressurized and removes the lid." See Kress Declaration, ¶ 21.

- <u>Evidence sought</u>: The details and related documents for any responsive tests, evaluations, etc., done by any entity other than Underwriter Laboratories (UL), for which testing documentation has already been provided.

- <u>Defendant's opposition</u>: Plaintiff's understanding is that Instant Brands is opposed to providing this information because it does not know what testing, if any, Midea did regarding this issue, and Instant Brands itself did none.

- <u>Plaintiff's argument</u>: Instant Brands' answers are evasive and non-responsive because they say "each model was also tested by Midea and Instant Brands," but provide no details regarding the testing. These are among several answers in which Instant Brands tries to evade answering as to *its own conduct* because that conduct strongly suggests a lack of concern for customer safety.
   o If Instant Brands *actually* tested for lid removal safety, it will be easy to describe what it did and identify the related documents. The same holds for Midea if Instant Brands knows what testing Midea did.
   o Conversely, if no testing was done, or Instant Brands does not know what testing was done, it is easy to say something like "Instant Brands did no testing on this issue," and "Instant Brands is not aware of any testing done by anyone other than UL."

**C.** **<u>Interrogatory No. 10</u>:** This question asks for information regarding other similar incidents (OSIs). See Exhibit 1, pp. 17-20. Despite the Court's preliminary Order on OSIs, several issues need to be addressed.

- <u>Evidence sought</u>: (1) A verified interrogatory answer that identifies each OSI, rather than disclosing some OSIs in unverified "disclosures." (2) The OSIs not yet disclosed (e.g., *Cooper*, other missing OSIs known to Plaintiff, and likely others unknown). (3) All *post*-incident OSIs.

- <u>Defendant's opposition</u>: Plaintiff's understanding is that Instant Brands: (1) is not opposed to combining all OSIs into its verified answer and intends to do so; (2) is not opposed to identifying missing OSIs like *Cooper*, but is uncertain why it missed them and where to find them; and (3) does not dispute that its post-incident OSIs are discoverable under applicable case law, but opposes identifying them because the Court did not order it to do so.

- <u>Plaintiff's argument</u>: (1) Plaintiff needs all OSIs to be identified in a verified interrogatory answer so Instant Brands can be held accountable for accuracy. (2) *Cooper* and the many other missing OSIs Plaintiff knows about need to be identified by Instant Brands. Its OSI list is very incomplete, which

suggests there may be other missing OSIs not yet known to Plaintiff.

- o (3) The issue of *post*-incident OSIs was not addressed in this Court's Order, but post-incident OSIs are discoverable and often admissible. "[E]vidence of both *prior* failures and *subsequent* failures may be admissible for certain purposes." *Rhodes v. JLG Indus., Inc.*, 2015 WL 11199066, at *4 (N.D. Ga. April 30, 2015) (emphasis added). Cases cited on this point in *Rhodes* include *Burke v. U-Haul Int'l, Inc.*, 2006 WL 3760317, at *2 (W.D. Ky. Dec. 15, 2006), holding that "[b]oth prior and subsequent substantially similar accidents may be introduced into evidence to show dangerousness and causation."

- o The Court described its Order as "guidance" intended to help the parties "resolve the other issues raised in Plaintiff's motion to compel." Order, Dkt 31, p. 5. The discovery of post-incident OSIs *was* an issue raised in Plaintiff's motion (see Dkt 25-1, pp. 9, 13), and the Court's guidance strongly suggests that the parties should follow the case law when resolving that issue.

  - ▪ Instant Brands cited no law denying discovery of post-incident OSIs. It is undisputed that such OSIs are subject to discovery under *Rhodes* and similar cases. The jury is entitled to know, and Plaintiff is entitled to show, that the lids blow off Instant Brands pressure cookers with disturbing regularity.[13] Denying discovery of such evidence would be highly prejudicial and create an unnecessary risk of reversible error. Instant Brands should be compelled to identify its post-incident OSIs.

**D.    Interrogatory Nos. 11-12:** These questions ask for the identities of the persons at Instant Brands who evaluate and investigate burn injury complaints (#11); and the person responsible for, and documents related to, Instant Brands' post-marketing surveillance of its pressure cookers (#12). See Exhibit 1, pp. 20-21.

- • Evidence sought: Identity of Instant Brands personnel who evaluate and investigate burn injuries (#11); and those responsible for, and documents related to, the post-marketing surveillance of its pressure cookers (#12).

- • Defendant's opposition: Plaintiff understands that Instant Brands has agreed to obtain and produce this information to the extent it is available. This question is included here because the information has yet to be provided.

---

[13] In addition to the approximately 15 burn injury cases Plaintiff's law firm has put in suit against Instant Brands, the firm has dozens of similar Instant Brands pressure cooker burn injury cases still in the claim stage. See Kress Declaration, ¶ 10.

- <u>Plaintiff's argument</u>: Plaintiff simply needs to know the key people and documents so depositions can be taken effectively and efficiently.

E.    **Interrogatory No. 15:** This question asks for a description of Instant Brands' communications with the CPSC and other regulators (e.g., Health Canada) regarding pressure cookers, and the identification of those documents. See Exhibit 1, pp. 29-30.

- <u>Evidence sought</u>: A description of Instant Brands' communications with regulators such as the CPSC and Health Canada, and the identification of those documents.

- <u>Defendant's opposition</u>: Plaintiff understands that Instant Brands refuses to disclose any of its communications with government regulators for highly contradictory and as-yet unexplained reasons. It says the communications are both "publicly accessible" and "confidential and protected by applicable authority under regulatory structures." *Id*. Attorney Vaughn admits she has never looked for the CPSC documents and does not know if they are publicly available or not. She explained that she is not Instant Brands' regulatory counsel and does not know what "applicable authority" is, or what "regulatory structures" means in this context. See Fact section above.
  - o  From Plaintiff's perspective – not defense counsel's – the basis for Defendant's opposition to producing CPSC communications is clear: those communications should contain all of its burn injury OSIs, and Instant Brands has many, many OSIs it would prefer not to disclose.

- <u>Plaintiff's argument</u>: Instant Brands' objections to this discovery are so vague and indecipherable – even to Instant Brands' own counsel – that it is hard to know how to respond. However, discovery of CPSC communications of manufacturers and sellers is routine in consumer product liability litigation and has been so for decades. See, e.g., *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122, 127 (S.D.N.Y. 1986), where the defendant claimed that "information it sent to the CPSC is confidential and exempt from disclosure." In response, the court noted that while the CPSC is prohibited by statute from publishing trade secrets that are sent to it (see 15 U.S.C. § 2055(a)(2)), such statutes "are not intended to enjoin the limited kind of disclosure encountered in judicial proceedings." 110 F.R.D. at 127. The court ordered Yamaha to produce its CPSC communications subject to a confidentiality order. *Id*.
  - o  Instant Brands again cited no law supporting an argument that CPSC communications are immune from discovery. Those documents

16

should now be identified and produced. Plaintiff agrees that the CPSC communications should be marked confidential and covered by the parties' Protective Order.

F.   **Interrogatory No. 19:** This question asks for the identification of the user manuals, promotional literature, web pages, social media postings, promotional videos and other documents that contain language to the effect that the lid of an Instant Brands pressure cooker "won't open until the float valve drops down." See Exhibit 1, pp. 32-33.

- Evidence sought: Identification of the documents that refer to the lid not opening until the float valve drops down.

- Defendant's opposition: Plaintiff understands that Instant Brands has agreed to try to obtain and produce this information. This question is included here because the information has yet to be provided.

- Plaintiff's argument: Plaintiff simply needs to locate these documents so depositions can be taken effectively and efficiently.

## IV.   SANCTIONS ARE BOTH APPROPRIATE AND NECESSARY

Instant Brands is abusing discovery at every turn, wasting the time and resources of Court and counsel. To date, it hasn't cost Instant Brands a dime to refuse to verify its interrogatory answers; or refuse to remove confidentiality designations from documents even its counsel agrees are not confidential; or refuse to provide post-incident OSI discovery and CPSC discovery, even though it can't articulate a plausible basis for refusing to produce that information. There is no reason to think this will stop until Instant Brands is forced to pay far more than a dime, and that can only happen with the Court's help.[14]

---

[14] Saying this won't stop without the Court's help is not hyperbole. Instant Brands served interrogatory answers on March 11, 2021 in another burn injury case handled by Plaintiff's law firm. This came weeks after the main meet-and-confer discussions in the instant case, where the need for verified answers and responsive OSIs was discussed at length. Nonetheless, the

Instant Brands' violation of the Court's January 28, 2021 Order puts all of the remedies of Rule 26, Rule 37, and the Court's inherent power at the Court's disposal, up to and including the entry of default judgment under Rule 37(b). See, e.g., *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536 (11th Cir. 1993). Although "a default sanction may be proper even when not preceded by the imposition of lesser sanctions," *id.* at 1544, Plaintiff understands that lesser sanctions may be tried here before default is considered.

The "lesser sanction" Plaintiff seeks is the payment by Instant Brands of the reasonable expenses, including attorney's fees, incurred in bringing her original Motion to Compel, the instant Motion, and the Motion to Remove Confidentiality Designations filed concurrently with this Motion.[15] An award of expenses is justified under several provisions of Rule 37:

- Rule 37(a)(5)(A) if the Court grants Plaintiff's Motion or Instant Brands provides discovery after the motion is filed;

- Rule 37(b)(2)(C) for Instant Brands' failure to comply with this Court's January 28, 2021 Order; and

- Rule 37(c)(1)(A) for Instant Brands' failure to supplement its document request responses pursuant to Rule 26(e)(1)(B) as ordered by the court in its January 28, 2021 Order.

---

interrogatory answers served in the new case were *unverified* (and still are), and rather than providing *five years* of pre-incident OSIs for *all models* – as ordered in *Cooper* and here – only *two years* were provided, and only for the *subject model*. In other words, Instant Brands is forcing re-litigation on verifications and OSIs, which needlessly runs up costs. Attorney Vaughn again indicated that she is not a fan of this approach by Instant Brands, but the plaintiff – and this law firm – will still have to clean up the mess. Pearson Declaration, ¶ 15.

[15] As noted throughout this Memorandum, Plaintiff's counsel have taken Instant Brands' attorney Vaughn at her word that she is working hard to prevent the discovery abuses detailed here. That said, if Instant Brands continues to obstruct discovery and intentionally run up costs, sanctions will likely also be sought against its counsel pursuant to Rule 26(g) and 28 U.S.C. § 1927.

Sanctions may also be imposed pursuant to the Court's inherent power. "A court may appropriately sanction a party or attorney who 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Malautea*, 987 F.2d at 1545-46 (citations omitted). Such sanctions are appropriate because a litigant's abusive discovery tactics cause "not only unnecessary delay and increased cost of ... litigation for the parties, but also an increased burden on the Court." *Id*. at 1542.

Plaintiff asks that she be awarded her reasonable expenses incurred in having to bring this motion, including attorney's fees. This will help compensate for the excessive amount of time that Plaintiff has had to spend dealing with Instant Brands' discovery abuse; help deter more such waste in the future; and help promote the ultimate goal of securing the just, speedy, and inexpensive determination of this action.[16]

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff respectfully requests that her Motion to Strike Unverified Interrogatory Answers, Compel Discovery, and Impose Sanctions be granted.

---

[16] Plaintiff's counsel have provided their time spent on this motion and their billing rates in their declarations. See Pearson Declaration, ¶ 16; Kress Declaration, ¶ 22. The expense information for Plaintiff's original Motion to Compel and the Motion to Remove Confidentiality Designations was similarly provided in the supporting declarations for those motions.

**JOHNSON BECKER, PLLC**

Dated: <u>March 26, 2021</u>

*/s/ Kenneth W. Pearson, Esq.*
Michael K. Johnson, Esq.
 (MN ID #0258696)
*Admitted Pro Hac Vice*
Kenneth W. Pearson, Esq.
(MN ID #016088X)
*Admitted Pro Hac Vice*
Adam J. Kress, Esq.
(MN ID #0397289)
*Admitted Pro Hac Vice*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

*In association with:*

**CONLEY GRIGGS PARTIN, LLP**

Cale Conley (Georgia Bar No. 181080)
4200 Northside Parkway, NWThe
Building One, Suite 300
Atlanta, Georgia 30327
(404) 467-1155
cale@conleygriggs.com

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of March, 2021, I presented the foregoing **PLAINTIFF'S MOTION TO STRIKE UNVERIFIED INTERROGATORY ANSWERS, COMPEL DISCOVERY, AND IMPOSE SANCTIONS,** which was served via electronic mail only upon all known counsel of record:

Katherine L. Vaughn, Esq.
*Admitted Pro Hac Vice*
LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
1700 Lincoln Street
Suite 4000
Denver, CO 80203
Katherine.Vaughn@lewisbrisbois.com

Jessica Odom, Esq.
LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
1180 Peachtree Street
Ste 2900
Atlanta, GA 30309
Jessica.Odom@lewisbrisbois.com

***Attorneys for Defendant Instant Brands***

Dated: March 26, 2021                          */s/ Adam J. Kress*